UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| DAN LEONARD and JAMES STOTT, Individually and On Behalf of All Others Similarly Situated, | Civil Action No. _____ |
| Plaintiffs, | COMPLAINT FOR VIOLATIONS OF §§14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934 |
| vs. | |
| EASYLINK SERVICES INTERNATIONAL CORPORATION, KIM D. COOKE, RICHARD J. BERMAN, PAUL D. LAPIDES, JOHN D. SIMON, THOMAS J. STALLINGS, OPEN TEXT CORPORATION, and EPIC ACQUISITION SUB INC., | Complaint – Class Action |
| Defendants. | |

Plaintiffs Dan Leonard and James Stott ("Plaintiffs"), individually and on behalf of all others similarly situated, respectfully bring this class action complaint for violations of §§14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9

promulgated thereunder against the herein named defendants and alleges the following:

## PARTIES

1.      Plaintiffs are and have at all material times been holders of EasyLink Services International Corporation ("EasyLink" or the "Company") common stock. Plaintiffs and EasyLink shareholders face irreparable injury as a result of the defendants' conduct in filing a materially misleading and false proxy statement in connection with the takeover of Easylink by Open Text Corporation ("Open Text"), which is set for a shareholder vote on July 2, 2012.

2.      Defendant EasyLink is a Delaware Corporation with its principal place of business located at 6025 The Corners Parkway, Suite 100 in Norcross, Georgia 30092. The Company is a global provider of communication applications that enable enterprises of all sizes to communicate securely and profitably with their customers, trading partners and other third parties.  EasyLink stock is publicly traded on the NASDAQ stock exchange under the ticker "ESIC."  On May 1, 2012, the Company announced that it had entered into a definitive merger agreement with Open Text for a takeover of the Company at $7.25 per share.  On June 6, 2012, the defendants, through the Company, issued a definitive proxy statement (the "Proxy") which, as more fully described below, is false and materially misleading, in violation of federal law.

- 2 -

3.      Defendant Kim D. Cooke is and has at all material times been a director of EaskyLink.  Defendant Cooke is Board Chairman.  Defendant Cooke prepared, reviewed and disseminated the June 6, 2012 definitive proxy statement.

4.      Defendant Richard J. Berman is and has at all material times been a director of EaskyLink.  Defendant Berman prepared, reviewed and disseminated the June 6, 2012 definitive proxy statement.

5.      Defendant Paul D. Lapides is and has at all material times been a director of EaskyLink. Defendant Lapides prepared, reviewed and disseminated the June 6, 2012 definitive proxy statement.

6.      Defendant John D. Simon is and has at all material times been a director of EaskyLink. Defendant Simon prepared, reviewed and disseminated the June 6, 2012 definitive proxy statement.

7.      Defendant Thomas J. Stallings is and has at all material times been a director of EasyLink. Defendant Stallings prepared, reviewed and disseminated the June 6, 2012 definitive proxy statement.

8.      The directors of EasyLink are collectively referred to herein as "Individual Defendants" or the "Board."

9.      Defendant Open Text is a Canadian Corporation with its principal place of business located in Waterloo, Ontario.  Open Text is engaged in providing

enterprise content management (ECM) software solutions.   Defendant Open Text prepared, reviewed and disseminated the June 6, 2012 definitive proxy statement.

10.   Defendant Epic Acquisition Sub Inc. is a Delaware Corporation, a wholly owned subsidiary of Open Text, and a vehicle through which the defendants seek to effectuate the Takeover of EasyLink by Open Text.  Defendant Epic Acquisition Sub Inc. will be referred to herein as "Open Text."

11.   The named defendants will collectively be referred to herein as "Defendants."

## JURISDICTION AND VENUE

12.   This Court has jurisdiction over all claims asserted herein, including claims for violations of §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder, pursuant to §27 of the 1934 Act..

13.   Venue is proper in this District because EasyLink has its principle place of business in this District.  Plaintiffs' claims arose in this District, where most of the actionable conduct took place, where most of the documents are electronically stored and where the evidence exists, and where virtually all the witnesses are located and available to testify at the jury trial permitted on these claims in this Court.  Moreover, each of the Individual Defendants, as Company officers and/or directors, has

extensive contacts with this District.  Furthermore, Open Text has extensive contacts in this District through the conduct alleged herein and through its business.

## CLASS ACTION ALLEGATIONS

14.    Plaintiffs bring this action individually and as a class action on behalf of all holders of EasyLink stock who are harmed by Defendants' actions described herein (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

15.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23.

16.    The Class is so numerous that joinder of all members is impracticable. According to EasyLink's Quarterly Report, filed with the SEC on May 30, 2012, as of May 22, 2012 there were over 30 million outstanding shares of EasyLink common stock, held by hundreds, if not thousands, of beneficial holders.

17.    There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, *inter alia*, the following:

(a)    whether the definitive proxy statement is false and materially misleading;

(b)     whether the Company and the Individual Defendants are liable for filing a false and materially misleading definitive proxy statement; and

(c)     whether Open Text aided and abetted the wrongful acts of the Individual Defendants.

18.     Plaintiffs' claims are typical of the claims of the other members of the Class, and Plaintiffs does not have any interests adverse to the Class.

19.     Plaintiffs are adequate representatives of the Class, have retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class.

20.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

21.     Plaintiffs anticipate that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

22.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

23.     EasyLink is a global provider of communication applications that enable enterprises of all sizes to communicate securely and profitably with their customers, trading partners and other third parties.  The Company delivers its cloud-based applications-as-a-service through a business integration network (BIN) comprised of enterprise-class platforms located in worldwide redundant and secure network operations centers.  The Company operates in two segments: the On Demand Messaging segment (On Demand), which includes all electronic fax, e-mail, document capture and management (DCM), workflow and notifies services, and the Supply Chain Messaging segment (Supply Chain), which includes all of its EDI and telex services.  On October 21, 2010, the Company acquired the iSend and iNotify advanced messaging businesses (the Xpedite Business) from Premiere Global Services, Inc. (PGI).

24.     The Company has performed well for its stockholders, weathering the various economic tides of the recent decades and steadily climbing:



25.     All indications are that the Company stock will continue to rise.   For instance, on May 30, 2012, the Company announced its third quarter results and "third quarter 2012 revenue of $45.4 million, net income of $4.3 million and adjusted EBITDA of $10.5 million."  On March 12, 2012, the Company announced its second quarter results and "second quarter 2012 revenue of $44.5 million, gross profit of $29.9 million, cash flow from operations of $15.6 million and adjusted EBITDA of $11.6 million."

26.     These second and third quarter results for fiscal 2012 are on the heels of phenomenal first quarter results.  On December 6, 2011, the Company announced "first quarter 2012 results setting record levels for fiscal first quarter results."  Defendant Stallings commented:

> These results demonstrate that enterprises across a broad range of industries continue to migrate their global communications requirements to the cloud and are increasingly choosing us for our innovative value-

added solutions and services. . . . Delivering these solid results speaks to EasyLink's exceptional value proposition of cloud delivered mission-critical messaging and communications services and our recurring revenue model which continues to produce consistent levels of predictive revenue and significant cash generation.

27.     It is no wonder that Open Text and other potential suitors described in the definitive proxy statement sought a takeover of EasyLink.  And on May 1, 2012, Defendants announced that EasyLink and Open Text entered into a definitive merger agreement whereby each share of EasyLink common stock would be purchased for $7.25 in cash by Open Text.

28.     On June 6, 2012, the Defendants issued a definitive proxy statement purporting to detail the process by which the Board, Open Text, and the Board's financial advisor, William Blair & Company, L.L.C. ("William Blair"), entered into the takeover agreement, as well as the assumptions the Board and William Blair made in determining that the takeover price of $7.25 is fair from a financial standpoint to EasyLink shareholders.  The definitive proxy statement alerts shareholders to a July 2, 2012 shareholder meeting where EasyLink shareholders are expected to vote on whether they accept the takeover by Open Text.  The definitive proxy statement falls far short of providing the necessary details that would enable Plaintiffs and EasyLink's shareholders to decide whether to vote in favor of the takeover or seek appraisal rights.

29.     Among other false and materially misleading aspects of the definitive proxy statement, the filing fails to provide the following information:

(a)     ***The financial projections provided by EasyLink management***, for fiscal years 2H2012-2016, including the following items: i) Taxes (or tax rate); ii) Changes in net working capital; iii) Capital expenditures; iv) Stock-based compensation expense; and v) Free cash flow.   It is black letter law that financial projections must be provided to shareholders in advance of a corporate takeover.   *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 203 (Del. Ch. 2007) ("It would therefore seem to be a genuinely foolish (and arguably unprincipled and unfair) inconsistency to hold that the best estimate of the company's future returns, as generated by management and the Special Committee's investment bank, need not be disclosed when stockholders are being advised to cash out. That is especially the case when most of the key managers seek to remain as executives and will receive options in the company once it goes private. Indeed, projections of this sort are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or (as already discussed) market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects."); *In re PNB Holding Co. S'holders Litig*., No. Civ.A. 28-N, 2006 WL 2403999, at *16 (Del. Ch. Aug. 18, 2006) ("In the context of a cash-out merger,

reliable management projections of the company's future prospects are of obvious materiality to the electorate.  After all, the key issue for the stockholders is whether accepting the merger price is a good deal in comparison with remaining a shareholder and receiving the future expected returns of the company."). These missing financial projections are material, rendering the definitive proxy statement false and materially misleading and, more importantly, preventing Plaintiffs and EasyLink shareholders from intelligently and rationally deciding for themselves whether they approve of the takeover or desire to seek appraisal.  Without this information, Plaintiffs and EasyLink shareholders face irreparable harm and have no adequate remedy at law;

(b)    *For William Blair's Discounted Cash Flow Analysis*, there are many missing details, rendering the analysis intellectually inaccessible: i) the definition of "free cash flow"; ii) whether stock-based compensation expense is treated as a cash expense; iii) the specific inputs and assumptions used to determine the discount rate range of 11%-14%; iv) the separate ranges of indicated value from the application of terminal multiples and perpetuity growth rates; and v) how, if at all, was the value of the company's NOLs accounted for in this analysis.  It is black letter law that shareholders face irreparable harm where a proxy statement contains intellectually inaccessible financial analysis.  *Maric Capital Master Fund, Ltd. v. Plato Learning, Inc.*, 11 A.3d 1175, 1176-78 (Del. Ch. 2010).  To be sure, as former

Chancellor William B. Chandler, III recently stated, "the discounted cash flow analysis [is] arguably the most important valuation metric" for a company. *Laborers Local 235 Benefit Funds v. Starent Networks, Corp.*, No. 5002-CC, 2009 WL 4725866, at *1 (Del. Ch. Nov. 18, 2009); *see also ONTI, Inc. v. Integra Bank*, 751 A.2d 904, 916 (Del. Ch. 1999) ("While no method of valuation is preferable per se in Delaware, . . . this Court frequently has employed the discounted cash flow as at least one method of valuation."); *Neal v. Alabama By-Products Corp.*, CIV. A. No. 8282, 1990 WL 109243, at *7 (Del. Ch. Aug. 1, 1990) ("[The DCF analysis] is considered by experts to be the preeminent valuation methodology."). These missing details regarding the Discounted Cash Flow Analysis renders the definitive proxy statement false and materially misleading and, more importantly, prevent Plaintiffs and EasyLink shareholders from intelligently and rationally deciding for themselves whether they approve of the takeover or desire to seek appraisal. Without this information, Plaintiffs and EasyLink shareholders face irreparable harm and have no adequate remedy at law;

(c)    *For William Blair's Leveraged Acquisition Analysis*, there are missing details, rendering the analysis intellectually inaccessible: i) the amount of debt used in the acquisition by the hypothetical financial buyer; and ii) the cost of the debt used in the acquisition by the hypothetical financial buyer. The cost and amount of

debt assumption in the Leveraged Acquisition Analysis is material to Company

shareholders because the harder it is to obtain debt, the higher the interest rate would

be, the more a hypothetical buyer is likely going to have to put down in initial capital

and the less that buyer is going to want to pay for an acquisition of a company like

EasyLink.  Conversely, the easier it is to obtain debt, the lower the interest rate would

be, the less a hypothetical is likely going to have to put down in initial capital and the

more that buyer would be willing to pay for an acquisition of a company like

EasyLink.   Thus, the implied price range of $6.55 to $7.63 generated by the

Leveraged Acquisition Analysis is meaningless without the assumption relative to

how hard it was for the hypothetical buyer analyzed to obtain debt.  If William Blair

assumed that debt is not readily achievable, then shareholders might view the implied

price range of $6.55 to $7.63, compared to the $7.25 per share price Open Text is

willing to pay, as being very favorable.  But if William Blair assumed that debt is

readily achievable, then that price range would likely be much higher and make the

$7.25 per share price Open Text is willing to pay seem not as favorable by

comparison.   These missing details regarding the Leveraged Acquisition Analysis

renders the definitive proxy statement false and materially misleading and, more

importantly, prevent Plaintiffs and EasyLink shareholders from intelligently and

rationally deciding for themselves whether they approve of the takeover or desire to

seek appraisal.  Without this information, Plaintiffs and EasyLink shareholders face irreparable harm and have no adequate remedy at law;

(d)     ***For William Blair's Selected Precedent and Selected Transactions Analyses***, there are missing details, rendering the analyses intellectually inaccessible: i) the individual multiples for the selected companies and transactions; and ii) how, if at all, was the value of the Company's NOLs accounted for in these analyses.  Without details of the companies used in these analyses and without an indication of whether the Company's NOLs were accounted for, Company shareholders are without the ability to scrutinize William Blair's assumptions and put them into proper context.  These missing details render the definitive proxy statement false and materially misleading and, more importantly, prevent Plaintiffs and EasyLink shareholders from intelligently and rationally deciding for themselves whether they approve of the takeover or desire to seek appraisal.  Without this information, Plaintiffs and EasyLink shareholders face irreparable harm and have no adequate remedy at law;

(e)     ***The definitive proxy omits details of how many of the 37 potential acquirers were strategic or financial***.  Black letter law requires this information to be disclosed to company shareholders prior to a shareholder vote on a corporate merger because, as indicated by the above lack of details from the Leveraged Acquisition

Analysis, company shareholders need to be able to determine whether the Board maximized shareholder value.  For instance, in *Netsmart*, the court enjoined a merger for failure to provide exactly this detail, stating:

> [I]t also seems to me to be important for Netsmart to at least disclose this judicial decision or otherwise provide a fuller, more balanced description of the board's actions with regard to the possibility of finding a strategic buyer. As the Proxy now stands, its description of that issue leads one to the impression that a more reasoned and thorough decision-making process had been used, and that the process was heavily influenced by earlier searches for a strategic buyer that provided a reliable basis for concluding that no strategic buyer interest existed in 2006.

924 A.2d at 209.  These missing details render the definitive proxy statement false and materially misleading and, more importantly, prevent Plaintiffs and EasyLink shareholders from intelligently and rationally deciding for themselves whether they approve of the takeover or desire to seek appraisal.  Without this information, Plaintiffs and EasyLink shareholders face irreparable harm and have no adequate remedy at law.

## COUNT I

### Against the Individual Defendants and Open Text for Violations of §14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder

30.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

31.     During the relevant period, the Individual Defendants and Open Text disseminated the false and misleading Proxy specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

32.     The Proxy was prepared, reviewed and/or disseminated by the Individual Defendants and Open Text.  It misrepresented and/or omitted material facts, including material information about the unfair sales process for the Company, the unfair consideration offered in the takeover, and the actual intrinsic value of the Company's assets.

33.     In so doing, the Individual Defendants and Open Text made untrue statements of material fact and omitted material facts necessary to make the statements that were made not misleading in violation of §14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.  By virtue of their positions within the Company, the Individual Defendants and Open Text were aware of this information and of their duty to disclose this information in the Proxy.

34.     The Individual Defendants and Open Text were at least negligent in filing the Proxy with these materially false and misleading statements.

35.     The omissions and false and misleading statements in the Proxy are material in that a reasonable shareholder would consider them important in deciding

- 16 -

how to vote on the takeover.  In addition, a reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to shareholders.

36.    By reason of the foregoing, the Individual Defendants and Open Texthave violated §14(a) of the 1934 Act and SEC Rule 14a-9(a) promulgated thereunder.

37.    Because of the false and misleading statements in the Proxy, Plaintiffs are threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Against the Individual Defendants and Open Text for Violation of §20(a) of the 1934 Act

38.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

39.    The Individual Defendants acted as controlling persons of Open Text within the meaning of §20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of EasyLink and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy filed with the SEC, they had the power to influence

- 17 -

and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading.

40.     Each of the Individual Defendants and Open Text was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

41.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the takeover.  They were thus directly involved in the making of this document.

42.     Open Text also had direct supervisory control over the composition of the Proxy and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy.  Open Text, in fact, disseminated the

Proxy and is thus directly responsible for materially misleading shareholders because it permitted the materially misleading Proxy to be published to shareholders.

43.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants and Open Text were each involved in negotiating, reviewing and approving the takeover.  The Proxy purports to describe the various issues and information that they reviewed and considered, descriptions which had input from both the directors and Open Text.

44.     By virtue of the foregoing, the Individual Defendants and Open Text have violated §20(a) of the 1934 Act.

45.     As set forth above, the Individual Defendants and Open Text had the ability to exercise control over and did control a person or persons who have each violated §14(a) and SEC Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to §20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, EasyLink's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand injunctive relief in their favor and in favor of the Class and against Defendants including but not limited to:

A.     Declaring that this action is properly maintainable as a class action;

B.     Declaring and decreeing that the Proxy is false and materially misleading;

C.     Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the takeover and the July 2, 2012 shareholder vote, unless and until the above-described corrective disclosures are timely disseminated to Company shareholders;

D.     Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED:  June 8, 2012                    ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                        JOHN C. HERMAN
                                        (Georgia Bar No. 348370)
                                        PETER M. JONES
                                        (Georgia Bar No. 402620)


                                        _____
                                             */s/ Peter M. Jones*
                                          PETER M. JONES

Monarch Centre, Suite 1650
3424 Peachtree Road, N.E.
Atlanta, GA  30326
Telephone:  404/504-6500
404/504-6501 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
STUART A. DAVIDSON
CULLIN A. O'BRIEN
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

 ROBBINS GELLER RUDMAN
  & DOWD LLP
RANDALL J. BARON
A. RICK ATWOOD, JR.
DAVID WISSBROECKER
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)

THE BRISCOE LAW FIRM, PLLC
WILLIE C. BRISCOE
The Preston Commons
8117 Preston Rd., Suite 300
Dallas, Texas 75225
214-706-9314 (office)
214-706-9315 (fax)

Attorneys for Plaintiffs and the Class